UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| KIMBERLY DAVIS, as the personal representative and next of kin of JERRY DUNLAP, deceased, | ) ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) ) No.: 3:24-CV-180-KAC-JEM |
| KNOX COUNTY, TENNESSEE, SHERIFF TOM SPANGLER, JOHN DOES 1 AND 2, and JANE DOES 1 AND 2, | ) ) ) ) ) ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

Now before the Court is the "Motion to Dismiss" filed by Defendants Knox County, Tennessee and Sheriff Tom Spangler (the "Moving Defendants") [Doc. 17]. In that Motion, the Moving Defendants argue that (1) Plaintiff does not have standing; (2) suit against Defendant Sheriff Spangler in his official capacity is redundant; (3) the Amended Complaint fails to state a plausible claim against Defendant Knox County, Tennessee; and (4) the Amended Complaint fails to allege plausible state law claims because they are immune [Doc. 17]. Plaintiff opposed in part [Doc. 20], and Defendants replied [Doc. 21]. For the reasons below, the Court **DISMISSES** Plaintiff's claims against the Moving Defendants.

**I. BACKGROUND**

Plaintiff Kimberly Davis is the widow and personal representative of Jerry Dunlap, who died on April 23, 2023, of an acute drug overdose approximately twenty-four hours[1] after he was

---

[1] In her Response to Defendants' Motion, Plaintiff states that "Mr. Dunlap was arrested on or about April 20, 2023" [Doc. 20 at 1]. But the Court relies on the veracity of the date alleged in the Amended Complaint for purposes of resolving Defendants' Motion. *See Ashcroft v. Iqbal*, 556

booked into the Roger D. Wilson Detention Facility in Knoxville, Tennessee (hereinafter "Facility") [Doc. 11 at 1 ¶1, at 2 ¶ 6, at 4 ¶ 15]. On Saturday, April 22, 2023, Mr. Dunlap began "experiencing a serious health crisis" [*Id.* at ¶¶ 15, 39]. At approximately 9:00 p.m. that evening, Mr. Dunlap reported his health problems to the officer on duty, Defendant John Doe 1, who laughed and told Mr. Dunlap to lie down [*Id.* ¶ 16]. Because Mr. Dunlap's efforts to receive help went unanswered, his cellmate, Ivan Cadillo, intervened [*Id.* ¶ 17]. At roughly 9:30 p.m., Mr. Cadillo began yelling and banging on the cell door, demanding help for Mr. Dunlap, whose medical condition was "rapidly deteriorating" [*Id.*]. Witnesses state that Mr. Cadillo continued to bang on the cell bars and yell for over two hours before a correctional officer appeared at the cell, even though Facility policy and procedure requires officers to make routine cell checks every thirty minutes [*Id.* ¶ 19].

Eventually, Defendant John Doe 2 came near Mr. Dunlap's cell and immediately called for assistance when he observed that Mr. Dunlap was unresponsive [*Id.* ¶ 20]. When the second officer arrived at the cell, the officers sent for a medic [*Id.* ¶ 21]. Mr. Dunlap was pulled out of his cell and placed on the floor [*Id.* ¶ 22]. Witnesses state that when this occurred, Mr. Dunlap's body was lifeless, and his skin tone was like that of a corpse [*Id.* ¶ 23]. The responding medics, Jane Does 1 and 2, gave Mr. Dunlap Narcan, believing that he had overdosed [*Id.* ¶ 24]. They then put the defibrillator on Mr. Dunlap [*Id.*]. An ambulance was called at approximately 1:00 a.m. [*Id.* ¶ 7]. The ambulance transporting Mr. Dunlap arrived at the hospital at 2:06 a.m., and Mr. Dunlap was pronounced dead at 2:15 a.m. [*Id.* ¶ 25]. An autopsy revealed the cause of Mr. Dunlap's death to be "acute methamphetamine and fentanyl intoxication" [*Id.* ¶ 7].

---

U.S. 662, 678 (2009); *see also State Farm Mut. Auto. Ins. Co. v. Slade Healthcare, Inc.*, 381 F. Supp. 3d 536, 573 (D. Md. 2019) (holding plaintiffs could not allege new fact in brief in opposition to motion to dismiss).

Plaintiff thereafter filed "this wrongful death action under Tenn. Code Ann. § 20-5-106(a) and federal law" [*Id.* ¶ 6] alleging that, despite knowledge of the opioid epidemic, Defendants maintained a policy or custom of underfunding, overcrowding, and understaffing the Facility and failing to train its staff, which led to a denial of adequate medical attention for Mr. Dunlap and his eventual death [Doc. 11 ¶¶ 30, 41, 42, 46, 55, 70, 71].  Specifically, Plaintiff alleges that with a "surge in opiate addiction" increasing the "detoxing and overdosing" incidents within the Facility, Defendants' decision to underfund, understaff, and overcrowd the Facility and fail to adequately train its officers on Tennessee Corrections Institute ("TCI") requirements and Facility policy regarding the observation of pretrial detainees led to the deprivation of Mr. Dunlap's constitutional right to adequate medical care [*See, generally*, *id.* ¶¶ 15, 28, 42, 44, 65, 70, 71].

The Amended Complaint alleges that Knox County was aware of the opioid epidemic affecting East Tennessee and the burden on the Facility yet deliberately failed to properly fund or staff the Facility to combat the epidemic, leading to the death of inmates "from overdose and medically unsupervised detox" [Doc. 11 ¶ 30].  Less than a month after Mr. Dunlap's death, Sheriff Spangler gave a public statement stating that the opioid epidemic was getting worse and that Facility staff was only "50% of where [the Facility] should be and that has put a huge burden on our shoulders" [*Id.* ¶ 31].  This shortage in staffing allegedly led to a purported policy of delaying booking and medical screening of inmates with officers instead placing intoxicated inmates in holding cells to "sleep it off" [*Id.* ¶ 32].  Plaintiff also cites a March 22, 2024, report (not attached to the Amended Complaint), that she maintains cites Knox County's failure to fund a proper medically monitored detox program/facility as a contributing factor in Knox County's failure to properly address the opioid epidemic, with the County instead relying on poorly trained, unlicensed Facility staff to act "like a substitute for proper medical treatment" [*Id.* ¶¶ 34-36].

3

As it relates to a failure to train, the Amended Complaint asserts that Facility officers and staff "were not adequately trained on" TCI standards requiring personal observation of inmates "at least once every hour on an irregular schedule[,]" with "[m]ore frequent observation" required "for inmates who are intoxicated" [*Id.* ¶¶ 62, 65 (quoting Tenn. Comp. R. & Reg. 1400-01-.16(2))]. And officers and staff were allegedly "not adequately trained on" the Facility's written Policy & Procedure requiring observation of detainees with a medical condition, such as withdrawals from drugs or alcohol, every 15 to 30 minutes [*Id.* ¶¶ 63, 65].

## II.   ANALYSIS

### A.   Subject Matter Jurisdiction under Federal Rule of Civil Procedure 12(b)(1)

First, the Moving Defendants raise a factual attack on this Court's jurisdiction, arguing that Plaintiff lacks standing to sue on Mr. Dunlap's behalf [Doc. 18 at 4-5]. To have standing, a plaintiff must (1) "have suffered an injury in fact[,]" (2) "demonstrate causation[,]" and (3) "prove that it is likely, rather than merely speculative, that a favorable decision could redress the injury." *Miller v. City of Wickliffe*, 852 F.3d 497, 502-03 (6th Cir. 2017) (citations omitted). Where, as here, a party levies a factual attack on subject matter jurisdiction, the Court gives "no presumptive truthfulness" to the relevant allegations in the complaint. *See Howard v. City of Detroit*, 40 F.4th 417, 422 (6th Cir. 2022) (citation omitted). The Court is "free to weigh the evidence and satisfy itself" that it has, or does not have, jurisdiction. *See United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994) (citation omitted).

"[O]nly the purported victim, or his estate's representative(s), may prosecute a section 1983 claim." *Chambers v. Sanders*, 63 F.4th 1092, 1100 (6th Cir. 2023) (quoting *Claybrook v. Birchwell*, 199 F.3d 350, 357 (6th Cir. 2000)). Because federal law does not cover "the survival of civil rights actions under § 1983," the law of the forum is generally "the principal reference point in determining survival of civil rights actions[.]" *See Robertson v. Wegmann*, 436 U.S. 584,

4

589-90 (1978). Under Tennessee law, the right of action for a wrongful death claim "may be instituted by the personal representative of the deceased or by the surviving spouse in the surviving spouse's own name[.]" Tenn. Code Ann. § 20-5-107(a); *see also Epperson v. City of Humbolt*, 140 F. Supp. 3d 676, 682 (W.D. Tenn. 2015).

Moving Defendants initially argued that Plaintiff failed to provide proof that she was the spouse of Mr. Dunlap or his personal representative [Doc. 18 at 4]. But in her Response, Plaintiff provided such proof [*See* Doc. 20-1]. Accordingly, the Court is satisfied that it has subject matter jurisdiction over this action.

**B.     Failure to State a Claim under Rule 12(b)(6)**

Second, the Moving Defendants argues that the Amended Complaint fails to state a claim for relief against them [Doc. 18 at 5-19]. To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of all the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Court must construe the Amended Complaint [Doc. 11] in the light most favorable to Plaintiff, accept all well-pled factual allegations as true, and draw all reasonable inferences in her favor. *See Hogan v. Jacobson*, 823 F.3d 872, 884 (6th Cir. 2016). But the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (internal quotation and citation omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

5

### 1. Plaintiff's Section 1983 Claims

As an initial matter, Plaintiff sued Defendant Sheriff Spangler solely in his official capacity as Sheriff of Knox County [*See* Doc. 11 at 3]. "[A]n official capacity claim filed against a public employee is equivalent to a lawsuit directed against the public entity which that agent represents." *Claybrook v. Birchwell*, 199 F.3d 350, 355 n.4 (6th Cir. 2000) (citation omitted). So, claims against him are generally redundant because Knox County itself is a defendant in this action in which Plaintiff raises overlapping, and in fact more extensive, claims against Defendant Knox County. *See Foster v. Mich.,* 573 F. App'x 377, 390 (6th Cir. 2014) ("Where the entity is named as a defendant, an official capacity claim is redundant."); *Schirmer v. Powell Cnty. Det. Ctr.*, 685 F. Supp. 3d 459, 463 (E.D. Ky. 2023) (dismissing as redundant official-capacity claims against sheriff and jailer where same claims were raised against governmental entities).

To the extent Plaintiff seeks declaratory or injunctive relief against Defendant Sheriff Spangler as opposed to monetary relief that would ultimately come from Knox County, [*see* Doc. 20 at 5], she would lack standing to seek such relief because Mr. Dunlap has passed. *See Diei v. Boyd,* 116 F.4th 637, 642 (6th Cir. Sept. 17, 2024) (a plaintiff who seeks solely "a declaratory judgment regarding events that already occurred" lacks standing to raise that claim). And she has not demonstrated standing to seek relief on behalf of others who are or might in the future be in prison. Accordingly, the Court **DISMISSES** Plaintiff's Section 1983 official capacity claims against Defendant Sheriff Spangler on that basis.

A municipality like Knox County cannot be held liable "under a theory of respondeat superior;" it "can only be held liable for 'its own wrongdoing.'" *See Helphenstine v. Lewis Cnty., Ky.*, 60 F.4th 305, 323 (6th Cir. 2023) (citation omitted). "A municipality may be held liable under one of four recognized theories: '(1) the existence of an illegal official policy or legislative

6

Case 3:24-cv-00180-KAC-JEM    Document 30    Filed 09/15/25    Page 6 of 12    PageID #: 178

enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations.'" *Id.* (quoting *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013)). The municipality's conduct must also be the "moving force or direct causal link in the constitutional deprivation." *Martinez v. Wayne Cnty., Michigan*, 142 F.4th 828, 843-44 (6th Cir. 2025) (cleaned up).

### a. Underfunding, Overcrowding, and Understaffing

The Amended Complaint alleges that Knox County's decision to underfund the Facility, which led to overcrowding and understaffing, caused the violation of Mr. Dunlap's rights. To state such a claim, Plaintiff must plausibly allege:

> (1) the existence of a clear and persistent pattern of unconstitutional conduct;
> (2) notice or constructive notice on the part of the [County];
> (3) the [County's] tacit approval of the unconstitutional conduct, such that [its] deliberate indifference in [its] failure to act can be said to amount to an official policy of inaction; and
> (4) that the [County's] custom was the "moving force" or direct causal link in the constitutional deprivation.

*Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005) (citing *Doe v. Claiborne Cnty.*, 103 F.3d 495, 508 (6th Cir. 1996)).

Here, the Amended Complaint alleges that (1) it is well known that inmates come into the Facility in withdrawal or overdose; (2) in the past "inmates . . . have died while in custody from overdose and medically unsupervised detox"; (3) staffing shortages at the Facility have increased the severity of the problem; and (4) rather than conducting a proper screening, Facility personnel place inmates in holding cells to "sleep it off" [Doc. 11 ¶¶ 37, 30, 31, 32].[2] But the Amended

---

[2] In her Response, Plaintiff cites to a May 17, 2023, WBIR article that is neither included in nor attached to the Amended Complaint [Doc. 20 at 9]. The Court declines to consider outside-the-complaint materials in assessing Moving Defendants' Motion to Dismiss. *See Cottemran v. City of Cincinnati*, No. 21-3659, 2023 WL 7132017, at *4 (6th Cir. Oct. 30, 2023).

7

Complaint fails to allege any specific incidents of prior inmate deaths from overdose or untreated withdrawals, much less a pattern of unconstitutional conduct. For *Monell* purposes, a pattern must generally be alleged by "enough similar incidents" sufficient to put officials on notice that persons would be subject to constitutional deprivations if the problem is not remedied. *See Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1247 (6th Cir. 1989). Thus, the Amended Complaint has not alleged facts showing a "a clear and persistent pattern of unconstitutional conduct." *See Thomas*, 398 F.3d at 429. Absent such a pattern, there can be no "notice or constructive notice" of unconstitutional conduct attributable to the County. *See id.* Further, the alleged violation of TCI's standards for booking and screening does not, alone, create a constitutional violation. More is required under the law, and the Amended Complaint is lacking in those key facts.

The Amended Complaint also fails to plausibly allege an official policy of inaction related to inadequate funding. Neither overcrowding nor the failure to adequately staff or fund a detention facility are themselves constitutional violations standing alone. *See Caraway v. CoreCivic of Tenn., LLC*, 98 F.4th 679, 685 (6th Cir. 2024); *Agramonte v. Shartle*, 491 F. App'x 557, 560 (6th Cir. 2012). Because Knox County's budgeting choices are facially lawful, Plaintiff must plead plausible factual allegations that Knox County made its budgeting choices "with deliberate indifference as to [their] known or obvious consequences." *See Gregory v. City of Louisville*, 444 F.3d 725, 752-53 (6th Cir. 2006) (citation and internal quotation marks omitted). That is, Plaintiff must set forth facts from which the Court can infer that Knox County "acted deliberately (not accidentally), [and] also recklessly 'in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" *Helphenstine v. Lewis Cnty.*, 60 F.4th 305, 317 (6th Cir. 2023) (citations omitted).

Here, again, the Amended Complaint is short on factual allegations and long on conclusory statements and legal conclusions. The Amended Complaint does not allege any facts, such as the

8

number of overdoses or medically unsupervised detoxes in the Facility and the number of deaths that resulted from those incidents during the relevant timeframe, that would permit the inference that Knox County, acting through its policymakers, knew that its budgeting choices and resulting staffing levels or population levels would result in unconstitutional harm. And there are no factual allegations that would permit the Court to infer that Knox County acted deliberately and recklessly in the face of those risks.

Even then, the Amended Complaint fails to plausibly allege facts showing that Knox County's conduct was the "moving force or direct causal link in the constitutional deprivation." *See Martinez*, 142 F.4th at 843 (cleaned up). Without establishing a direct causal link between the actions of Knox County and Mr. Dunlap's death, the Amended Complaint does not state a claim against Knox County. *See id.* In fact, the Amended Complaint alleges facts that suggest an independent break in the causal chain by at least one officer [*See* Doc. 11 ¶¶ 15-16, 19 (describing laughing at a request for help and "2 hours" of inaction)]. Plaintiff argues that "[c]ommon sense demands that if the jail had been adequately staffed (and therefore properly funded and not overcrowded), Mr. Dunlap's medical emergency would have been attended to immediately" [Doc. 20 at 11]. But even viewing the facts in the light most favorable to Plaintiff, they cannot be read that broadly. To accept Plaintiff's theory would be to hold a municipality liable any time a tragic event occurs, because there could always be more staff on hand. The law requires more. *See Caraway*, 98 F.4th at 685–86 (allegation that understaffing "'led to' rampant drug use," without any factual support, is a conclusory statement); *see also Massey v. CoreCivic, Inc.*, No. 23-5865, 2024 WL 3086518, *2 (6th Cir. June 21, 2024) (Plaintiff failed to state a claim where "Under the pleaded facts, poor training or staffing or another unlawful [] policy might have caused [the decedent's] death. But it is also possible that an employee's negligence was to blame—or that [the decedent] would have died even if CoreCivic personnel did nothing wrong.").

9

### b. Failure to Train

Moving to the Failure-to-Train theory, to state a failure-to-train claim, the Amended Complaint must include factual allegations permitting the Court to infer that "'(1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury.'" *See Howell v. NaphCare, Inc.*, 67 F.4th 302, 319 (6th Cir. 2023) (citing *Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006)). There are two ways to show deliberate indifference on behalf of the municipality: either (1) a "pattern of similar constitutional violations by untrained employees" or (2) "a single violation of federal rights, accompanied by a showing that [the municipality] has failed to train its employees to handle recurring situations presenting an obvious potential for a constitutional violation." *Shadrick v. Hopkins Cnty.*, 805 F.3d 724, 738-39 (6th Cir. 2015) (internal quotation marks and citations omitted).

Here, the Amended Complaint contains mainly conclusory statements that "staff were not adequately trained" rather than factual allegations [*See* Doc. 11 ¶ 65]. The Amended Complaint is devoid of factual allegations about the relevant training Knox County officers received [*See* Doc. 11]. Mere allegations that an officer was improperly trained or that an injury could have been avoided with better training are insufficient to state a plausible claim of deliberate indifference. *See, e.g. Harvey v. Campbell Cnty.,* 453 F. App'x 557, 563 (6th Cir. 2011). And violation of a TCI or Facility policy alone is not enough to make a failure to train claim. *See Napper v. Hankison*, 617 F. Supp. 3d 703, 745-46 (W.D. Ky. 2022) ("[W]hile standard operating procedures may of course call for a higher or different standard of care than does the Constitution, that does not supplant the Constitution as the source of legal liability under § 1983."). Therefore, the Amended Complaint fails to state a Section 1983 claim against the Moving Defendants.

### 2. Plaintiff's State Law Claims

As it relates to Plaintiff's state law claims, she admits that "the TGTLA [Tennessee Governmental Tort Liability Act] retains immunity for civil rights claims" [Doc. 20 at 15]. And she does not further defend against the Moving Defendants' Motion to Dismiss these claims based on immunity under the TGTLA [*See* Doc. 20; *see also* Doc. 18 at 19-20 (compiling cases on TGTLA immunity)]. *See* E.D. Tenn. L.R. 7.2 ("Failure to respond to a motion may be deemed a waiver of any opposition to the relief sought"). Accordingly, the Moving Defendants are entitled to summary on Plaintiff's state law claims.

## III. CONCLUSION

For the reasons above, the Court (1) **GRANTS** the Moving Defendants' Motion to Dismiss [Doc. 17] **in part** and **DENIES it in part and** (2) **DISMISSES** Plaintiff's claims against Defendants Knox County, Tennessee and Sheriff Tom Spangler. Because Plaintiff's claims against the Moving Defendants are dismissed, the Court **DENIES** the Moving Defendants' Moving to Stay Discovery [Doc. 26] as **moot**.

The only remaining Defendants in this action are John Does 1 and 2 and Jane Does 1 and 2 [*See* Doc. 11]. On April 22, 2024, Plaintiff originally filed this action, arising out of events that allegedly occurred on or about April 23, 2023 [Docs. 1, 11 at 1]. However, Plaintiff, who is represented by counsel, has not identified or served any of the Doe Defendants. *See* Fed. R. Civ. P. 4(m). And the statute of limitations may have run on any claims against them. *See Foster v. State*, 150 S.W.3d 166, 168 (Tenn. Ct. App. 2004). Accordingly, Plaintiff shall file a status report by **September 19, 2025** outlining whether, and if so how, she intends to proceed against the Doe Defendants. Any request to serve the Doe Defendants now must show good cause. *See* Fed. R. Civ. P. 4(m). A failure to timely comply will be grounds for the Court to dismiss Plaintiff's

remaining claims. *See* Fed. R. Civ. P. 41(b); *Schafer v. City of Defiance Police Dep't*, 529 F.3d 731, 736 (6th Cir. 2008) (citation omitted) (noting that Rule 41(b) "confers on district courts the authority to dismiss an action for failure of a plaintiff to prosecute the claim or to comply with the Rules or any order of the court").

    **SO ORDERED**.

    **ENTER:**

/s/ Katherine A. Crytzer  
KATHERINE A. CRYTZER  
United States District Judge
